**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE**

**CIVIL ACTION NO. 07-42-DLB**

**JOHN A. SANDERS**                                                                 **PLAINTIFF**

**vs.**                     **<u>MEMORANDUM OPINION & ORDER</u>**

**MICHAEL J. ASTRUE, Commissioner
of Social Security**                                                           **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff John A. Sanders filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments on January 3, 2003. (Tr. 65-67).[1] Plaintiff alleges he became unable to work on November 1, 2002. (Tr. 65). He alleges disability due to arthritis, back pain, high blood pressure, nerves, and anxiety. (Tr. 48). His applications were denied initially and upon reconsideration. (Tr. 42-45; 48-50). At Plaintiff's request, an administrative hearing was conducted on March 7, 2005, by Administrative Law Judge (ALJ) Andrew J. Chwalibog. (Tr. 423-41). A supplemental hearing was conducted on September 13, 2005. (417-22). On November 8, 2005, the ALJ ruled that Plaintiff was not

---

[1] The transcript indicates that SSI exhibits were not available for inclusion. (Ct. Tr. Index). Thus, many of the citations refer only to DIB documents.

disabled and therefore not entitled to DIB or SSI payments. (Tr. 16-24). This decision became the final decision of the Commissioner when the Appeals Council denied review on January 23, 2007. (Tr. 4-6).

On March 9, 2007, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication. (Doc. # 9, 10).

**II.    DISCUSSION**

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 18). At Step 2, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine and depressive disorder not otherwise specified to be severe within the meaning of the regulations. (Tr. 18-19). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 19-20). At Step 4, the ALJ found that Plaintiff retains the following residual functional capacity (RFC):

> to lift or carry fifty pounds occasionally and twenty-five pounds frequently. He is able to stand and walk for six hours and sit for six hours in an eight-hour workday. He can occasionally stoop and climb ladders, ropes, and scaffolds. He can frequently climb ramps and stairs, kneel, crouch, and crawl. The claimant is moderately limited in his ability to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. He is able to understand and recall material, maintain the mental effort needed to complete tasks, handle routine changes, and function in an object-focused setting.

(Tr. 20-22). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a coal truck driver. (Tr. 22).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in the national and regional economies, despite his limitations. (Tr. 23). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (37 years of age at the time of decision and so a "younger" individual), education (high school), work experience, and RFC. (Tr. 20-23).[2] The VE testified that Plaintiff could work as a packaging machine operator, material handler, gate attendant, machine tender, bench worker, and product inspector. (Tr. 23). Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 23-24).

**C.   Analysis**

Plaintiff raises one challenge in his appeal. Plaintiff claims that the ALJ erred by failing to provide reasons for his decision not to adopt the December 18, 2003, opinion of Dr. Jay V. Narola, a psychiatrist. (Tr. 367-69). In a December 18, 2003, treatment note, Dr. Narola provisionally diagnosed Plaintiff with depressive disorder not otherwise specified and intermittent explosive disorder. (Tr. 368). Dr. Narola ruled out bipolar disorder and noted that Plaintiff had a Global Assessment of Functioning (GAF) scale score of 40-50 at present and a GAF high of 55 for the past year. (*Id.*) Plaintiff contends that the ALJ's assessment of Plaintiff's mental RFC is inconsistent with the GAF score indicated by Dr. Narola. Accordingly, Plaintiff argues that Social Security Ruling 96-8p requires the ALJ to explain why he did not adopt Dr. Narola's opinion.

---

[2] The ALJ noted that "[t]ransferability of job skills is not material to the determination of disability due to the claimaint's age." (Tr. 23).

Contrary to Plaintiff's position, the ALJ did provide adequate reasoning for his decision not to adopt the GAF score indicated by Dr. Narola. In fact, he explicitly referenced the results of the at-issue GAF score. (Tr. 21 ("In December 2003, the claimant's GAF was placed at 40-50.")). The ALJ also noted that there was "no evidence of mental health treatment after April 2004." (*Id.*) Furthermore, the ALJ cited a July 30, 2005, psychiatric evaluation in which Plaintiff was assessed as having a GAF of 65-70. (Tr. 411). These statements highlight the fact that the at-issue GAF score was representative of Plaintiff's mental functioning on that single day.[3] The ALJ also acknowledged a more recent GAF score with results that he was free to accept as being more consistent with the other evidence in the record. Based on this discussion of Plaintiff's GAF scores and the ALJ's more general consideration of Plaintiff's mental functioning, the Court finds that the ALJ provided sufficient reasoning as to why he did not adopt Dr. Narola's GAF score.

Moreover, had the ALJ failed to provide reasoning for his decision not to adopt the GAF score from the December 18, 2003, psychiatric evaluation, Plaintiff's argument still fails. Case law supports Defendant's position that consideration of GAF scores is not essential to determining an individual's RFC. *See Howard v. Comm'r of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."). The Sixth Circuit has stated that it is "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*

---

[3] It should be noted that Dr. Narola had only seen Plaintiff once when he made his GAF score assessment.

5

*v. Comm'r of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (unpublished decision).

### III.     CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**.

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 18th day of January, 2008.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-07-42-SandersMOO.wpd